1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

9
10
11
12
13
14
15
16
17

| | |
|---|---|
| NANCY J. M.,[1] | Case No. ED CV 19-01144-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

18
19
20
21
22
23
24
25
26
27
28

I.    **INTRODUCTION**

Plaintiff Nancy J. M. ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income.  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

II.    **PROCEEDINGS BELOW**

On October 20, 2015, Plaintiff filed a Title II application for a period of disability and DIB alleging disability beginning on October 1, 2014.  (Administrative

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Record ("AR") 200, 205.)   Plaintiff also filed a Title XVI application for supplemental security income.  (AR 207.)  Her applications were initially denied on February 9, 2016, and upon reconsideration on April 14, 2016.  (AR 96, 97, 122, 123.)  Plaintiff filed a written request for hearing, and a hearing was held on May 3, 2018.  (AR 41-71, 140.)  Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert ("VE").  (AR 41-71.)  On July 12, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act, from October 1, 2014, through the date of the decision.  (AR 34-35.)  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (AR 1-3.)  Plaintiff filed this action on June 21, 2019.  (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2014, the alleged onset date ("AOD").  (AR 25.)  At **step two**, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease; bilateral tendinitis of the shoulders; bilateral plantar fasciitis with heel spurs; hypertension, obesity; and a depressive disorder.  (*Id*.)  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (AR 26.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work . . . .  However, she can operate bilateral foot and hand controls only on a frequent basis.  She can only frequently reach overhead bilaterally.  She can only frequently balance, stoop, kneel, crouch, and crawl.  In addition, the claimant is limited to tasks that can be learned within a short demonstration period of up to 30 days, and

1
2
3
4

> with no more than frequent changes to the workplace tasks and duties. She can work primarily with things, rather than with people, such that the work contact with others is only occasional. Finally, the claimant can maintain concentration, pace, and persistence on this limited range of tasks for 2 hours at a time before taking a regularly scheduled break and then returning to work.

5

(AR 29.)

6

At **step four**, the ALJ found that Plaintiff is capable of performing past

7

relevant work as a storage-facility rental clerk, and thus the ALJ did not continue to

8

step five. (AR 33-34.)  Accordingly, the ALJ determined that Plaintiff had not been

9

under a disability from the AOD through the date of the decision.  (AR 34-35.)

10

### III.   STANDARD OF REVIEW

11

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's

12

decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are

13

supported by substantial evidence and if the proper legal standards were applied.

14

*Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "'Substantial evidence'

15

means more than a mere scintilla, but less than a preponderance; it is such relevant

16

evidence as a reasonable person might accept as adequate to support a conclusion."

17

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc.*

18

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).  An ALJ can satisfy the substantial

19

evidence requirement "by setting out a detailed and thorough summary of the facts

20

and conflicting clinical evidence, stating his interpretation thereof, and making

21

findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

22

"[T]he Commissioner's decision cannot be affirmed simply by isolating a

23

specific quantum of supporting evidence.  Rather, a court must consider the record

24

as a whole, weighing both evidence that supports and evidence that detracts from the

25

Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001)

26

(citations and internal quotation marks omitted).  "'Where evidence is susceptible to

27

more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan*

28

*v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v.*

3

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.   **DISCUSSION**

Plaintiff raises three issues for review: (1) whether the ALJ has properly considered the relevant medical evidence of record in assessing Plaintiff's RFC; (2) whether the ALJ has properly considered Plaintiff's subjective statements of record and testimony under oath in assessing Plaintiff's RFC; and (3) whether the ALJ's conclusions at step four as to Plaintiff's past relevant work are supported by substantial evidence of record. (*See* Joint Submission ("JS") 4.) For the reasons below, the Court affirms.

### A.   **The ALJ Properly Considered Plaintiff's Subjective Statements of Record and Testimony in Assessing Plaintiff's RFC[2]**

Plaintiff contends that the "ALJ has failed to properly consider Plaintiff's subjective statements of record and testimony under oath regarding her physical and mental symptoms and limitations in the assessment of Plaintiff's [RFC]." (JS 18; *see* JS 19-21.) The Commissioner contends that the ALJ properly evaluated Plaintiff's subjective testimony. (JS 21; *see* JS 22-26.)

#### 1.   **Plaintiff's May 3, 2018 Testimony**

Plaintiff testified that she lives with her friend and her friend's husband in their house. (AR 51.) Plaintiff stated that her friend and sister help her get out of bed, get to the bathroom, shower, and get dressed. (AR 52.) Plaintiff's stated that her friend

---

[2] Because subjective symptom testimony is one factor that the ALJ must consider when assessing a claimant's RFC, the Court addresses the issue of Plaintiff's subjective testimony before discussing the overall RFC determination.

gets things ready for Plaintiff to bathe, will "wash" her and her hair, and stays in the bathroom with her.  (AR 61.)

Plaintiff stated that once she gets dressed and cleaned up, she stays home with her friend or her sister.  (AR 53.)  Plaintiff testified that she does not help with any of the household chores.  (*Id.*)  She explained that she gets through her anxiety and the stress of day-to-day activities with the help of her yorkie.  (AR 53-54.)  She feeds her dog two or three times per day and gives her a lot of treats.  (AR 54.)

Plaintiff stated that during the day she speaks on the phone with her friends. (AR 56.)  She testified that she receives text messages and responds using a voice-to-text function.  (*Id.*)  She explained that she answers via text when she can, but states that she does not answer because it is too difficult.  (*Id.*)

Plaintiff has a driver's license, but did not drive herself to the hearing.  (AR 47.)  A friend drove her to the hearing.  (*Id.*)  The trip took 40 minutes because she had to stop three times to go to the restroom.  (AR 48.)  She also stated that she went to the restroom after she arrived at the building.  (*Id.*)  Plaintiff could not drive herself to the hearing because she wears a back brace and cannot drive with it on.  (*Id.*)  She last drove approximately four months prior to the hearing.  (*Id.*)  She stated that she has tried to drive herself to doctors' appointments but on the way, she has accidents. (*Id.*)  She is at the point where she has her sister or friend drive her.  (*Id.*)

Plaintiff has a GED.  (AR 48.)  She last worked about four and a half years ago.  (AR 49.)  She worked for in-home supportive services as a care provider.  (*Id.*) She had to stop working because of her chronic explosive diarrhea condition.  (*Id.*) Plaintiff worked as a care provider four hours per day, five days per week.  (*Id.*) Plaintiff stated that after working as a care provider, she applied for other jobs, but was never hired.  (AR 49.)  Plaintiff stopped looking for work when she applied for disability.  (*Id.*)  She stopped her job search because she was "having more problems with the arthritis in [her] hands and can't . . . type."  (*Id.*)  She stated that she does not use computers.  (*Id.*)

Plaintiff testified that she is 5 feet 7 inches tall and weighs 240 pounds.  (AR 46.)  Plaintiff stated that her doctors have given her a diet with alkaline water and have told her that it is important that she exercise.  (*Id.*)  Plaintiff testified that she has implemented dietary changes.  (*Id.*)  The doctors recommended back strengthening exercises because she fractured her back and had two bulging discs. (*Id.*)  Plaintiff stated that she was told it would be a good idea for her to walk.  (*Id.*)  When asked if she had implemented the recommendation, Plaintiff responded that she does not "stray far from the house."  (*Id.*)  Plaintiff explained that she has to stay close to the restroom because she has chronic explosive diarrhea.  (AR 47.)  She described the experience as humiliating, embarrassing, and degrading.  (*Id.*)  Given her condition, Plaintiff states that she does not see how she can work.  (*Id.*)  Plaintiff testified that she has to have someone else clean her because she cannot clean herself. (*Id.*)

Plaintiff explained that since 2014 her conditions have worsened.  (AR 52-53.) Her arthritis is worse.  (AR 53.)  Plaintiff testified that her conditions include chronic explosive diarrhea, difficulty using her hands, and problems with her back.  (AR 56.) She cannot stand up right and has difficulty walking since her back fracture.  (AR 57.)  Plaintiff reported that she is able to stand and walk for approximately five minutes before needing to sit down again.  (*Id.*)  She can sit for anywhere between two to 10 minutes before needing to stand up, depending on the day.  (*Id.*)  Plaintiff's day consists of changing between sitting and standing, and she spends a lot of time in the bathroom.  (*Id.*)  Plaintiff's doctors want to get her back in better shape before doing anything that could aggravate her kidneys or bowels, but the doctors are looking for other solutions.  (AR 58.)  She stated that her doctors tell her to take it slow and take her medicine.  (*Id.*)  Plaintiff gets hydrocortisone injections in her back to help manage the constant pain.  (*Id.*)

Plaintiff explained that she cries for no reason.  (AR 59-60.)  She gets upset and anxious about the chronic explosive diarrhea.  (AR 60.)  Plaintiff reported that

she takes many medications, including atenolol and hydrochlorothiazide for her blood pressure. (*Id.*) She also takes Abilify, Wellbutrin, nitroglycerin, Flonase, Zyrtec, and Motrin. (*Id.*) Plaintiff takes Norco for back pain. (*Id.*)

Plaintiff also testified that she has problems with her shoulders. (AR 60-61.) She cannot lift her arms over her head. (AR 61.) As to her depression and anxiety, Plaintiff stated that she sees her psychiatrist once a month. (*Id.*) She takes trazodone, gabapentin, and Motrin. (*Id.*) She takes Wellbutrin and Abilify for depression. (*Id.*) Plaintiff explained that she falls four to five times every few days. (AR 61-62.) She gets sharp pains shooting up her back or sciatic nerve and that can make her fall. (AR 62.) Her falls are unexpected, she feels pain and then is on the ground. (*Id.*) She also stated she drops things on a daily basis. (*Id.*) Plaintiff does not sleep well at night and takes trazodone and Ambien to help her. (*Id.*) However, even with medication, she wakes up several times throughout the night. (*Id.*) She is woken up by pain in her back or side. (*Id.*) Plaintiff stated she was prescribed a back brace and was told that using a cane would be beneficial to her. (AR 63.)

## 2.    Plaintiff's April 1, 2016 Function Report

On April 1, 2016, Plaintiff prepared a function report. (*See* AR 311-19.) Plaintiff reported having recurrent major depression and anxiety with major mood swings. (AR 311.) Plaintiff also stated that she has urge incontinence and irritable bowel syndrome with explosive diarrhea "which increases [her] anxiety level on a daily basis." (*Id.*) She is in "constant fear of urinating and [defecating]" on herself in public and that stops her from going out in public. (*Id.*) She reported that she has to stay close to the bathroom at all times. (*Id.*)

Plaintiff explained that during the day, due to her urge incontinence and irritable bowel syndrome with explosive diarrhea, she can no longer prepare her own meals, so she sits on the couch and watches television, uses the computer when she is not in the bathroom, and goes to doctors' appointments. (AR 312.) Plaintiff explains that she goes to the bathroom "a minimum of 12 hours out of 24 hours every

day." (*Id.*) She brushes her teeth and combs her hair. (*Id.*) She stated that she is responsible for her dog. (*Id.*) She reported that, before her conditions, she was able to prepare her meals, do household chores, work, shop, and take care of herself without help. (*Id.*) Plaintiff explained that her insomnia and severe depressive disorder cause her to "lose sleep and [her] energy is extremely low and lack of concentration." (*Id.*)

As to her personal care, Plaintiff sometimes needs help getting dressed and bathing. (AR 312.) Plaintiff explained that because she has low energy, she needs reminders to take care of personal need, and help getting dressed and bathed. (AR 313.) She needs daily reminders to take medications because she forgets. (*Id.*)

Plaintiff stated that she prepares her own meals every day. (AR 313.) Her meals include canned soup, sandwiches, and frozen dinners. (*Id.*) It takes between 10 and 30 minutes to prepare her meals. (*Id.*) As to household chores, Plaintiff can care for her dog, check the mail, and make her bed. (*Id.*) Plaintiff spends between 5 and 30 minutes on these chores. (*Id.*) She reported needing reminders and encouragement to do things daily. (*Id.*) She does not do house or yardwork because she has low energy, depression, and has to stay close to the bathroom. (AR 314.)

Plaintiff stated that she goes outside to check her mail or to attend doctors' appointments. (AR 314.) When she goes out, she drives a car or rides in a car. (*Id.*) She can drive a car and can go out alone. (*Id.*) She shops in stores, by phone, and by computer. (*Id.*) She typically shops between two and four times a week. (*Id.*) However, she can no longer shop for herself in stores because of her conditions. (*Id.*) She is able to pay bills, count change, handle a savings account, and use her checkbook or money orders. (*Id.*)

Plaintiff's hobbies and interests include, watching television and using the computer. (AR 315.) Plaintiff spends time with others by speaking on the phone daily and talking to her doctors at appointments every week. (*Id.*) Plaintiff regularly attends doctors' appointments and goes to church when she feels like it. (*Id.*)

Plaintiff stated that since her conditions began, she is not social and does not participate in social activities. (AR 316.) Plaintiff reported that her conditions affect her ability to lift, squat, bend, stand, walk, kneel, and stair-climb. (*Id.*) Her ability to concentrate is affected. (*Id.*) She reported that she can only lift 10 pounds and cannot squat or bend without feeling great pain. (*Id.*) She runs out of breath while climbing stairs. (*Id.*) Plaintiff can walk less than one block, before having to rest for 10, 15 minutes or more. (*Id.*) She can pay attention for an hour or less. (*Id.*) She can follow some written instructions like a recipe, but cannot fill out forms because they are confusing. (*Id.*) Whether she can follow spoken instructions depends on who is giving the instructions because she is easily confused. (*Id.*)

Plaintiff reported that she has problems working with others. (AR 317.) She was previously fired because she had problems getting along with others, including her bosses. (*Id.*) She does not handle stress well. (*Id.*) Plaintiff does not handle changes well at all, and hates change. (*Id.*) Plaintiff has extreme anxiety, fears urinating or defecating herself in public, and fears abandonment. (*Id.*) She uses glasses and night splints every day. (*Id.*) Plaintiff uses Trazodone which causes her to lose sleep, have disturbing dreams, anxiety, and depression. (AR 318.)

### 3.   Plaintiff's November 13, 2015 Function Report[3]

Plaintiff completed a function report on November 13, 2015. (AR 251-259.) Plaintiff reported feeling a lot of pain in her feet and being unable to walk or stand for more than 30 minutes. (AR 251.) Plaintiff explained that before her condition she was able to walk and stand for longer periods of time, and she could go for long walks. (AR 252.) She was also able to do household chores, including vacuuming and dusting. (*Id.*) She stated that she cannot lift things that are over 10 pounds. (*Id.*) Plaintiff reported that her foot pain also affects her sleep. (*Id.*)

///

---

[3] Because the second November 13, 2015 function report is similar to the first report, the Court provides only a brief summary. (*See* AR 311-319.)

Plaintiff stated that she has no problem with personal care and did not need reminders to take care of her personal needs and grooming. (AR 252-53.) Plaintiff can prepare her own meals, wash her dishes, and do her own laundry. (AR 253.) Plaintiff reported that she goes grocery shopping, but never for more than 30 minutes. (AR 254.) Plaintiff also reported going to doctors' appointments and church on Sundays when she feels like it. (AR 255.) She did not need anyone to accompany her. (*Id.*)

Plaintiff reported that her illnesses and conditions affect her abilities to lift, squat, bend, stand, walk, climb stairs, and concentrate. (AR 256.) She could bend and squat for less than five minutes. (*Id.*) She could climb stairs for five minutes. (*Id.*) She was able to concentrate for 10 to 60 minutes. (*Id.*) She could walk for one block before needing to rest for 15 to 20 minutes. (*Id.*) Plaintiff also explained that she has tarsal tunnel in both of her feet which causes extreme pain. (AR 282.) Plaintiff reported that this condition makes it "very difficult to walk and stand due to the extreme pain." (*Id.*)

### 4. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d

1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 5.    Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 30.) Specifically, the ALJ found that Plaintiff's statements were inconsistent with the objective medical evidence, Plaintiff's treatment, and Plaintiff's reported activities. (AR 33; *see* AR 29-33.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

### a.    Reason No. 1: Inconsistent with the Objective Medical Evidence

The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

Plaintiff "strongly disagrees" with the ALJ's finding that the objective medical evidence does not support Plaintiff's statements. (JS 19.) Instead, Plaintiff contends that she has "well documented impairments affecting her bilateral feet, lumbar spine, and gastrointestinal system." (*Id.*) Plaintiff also argues that the record documents consistent "severe mental impairments including major depressive disorder and anxiety," which support her statements regarding her mental symptoms and limitations. (*Id.*) She also contends that the ALJ failed to specify which statements were not fully credible. (JS 20.)

As to Plaintiff's alleged difficulties sitting, standing, and walking, the ALJ found that the medical evidence did not support the full extent of Plaintiff's claims.

11

(*See* AR 30.)  The ALJ relied on records showing Plaintiff had a normal gait and balance.  (*Id*, citing 451, 559, 563, 632.)  Plaintiff did not require the use of an assistive device and testified that she was not prescribed a cane.  (AR 30, citing AR 451; *see* AR 63.)  She was "able to heel walk and toe walk 'with ease.'"  (AR 30.) The ALJ also identified records documenting that Plaintiff had "5 out of 5" motor strength in her major muscle groups.  (*Id.*, citing AR 559, 564.)  Additionally, the ALJ noted that Plaintiff did not appear to be in acute distress during appointments, and her physicians did not note that Plaintiff "need[ed] to alternate between seated and standing positions every 5 to 15 minutes."  (AR 30; *see* AR 360-635.)  While Plaintiff used a back brace for a compression fracture, the ALJ noted that the injury healed, and Plaintiff was advised that she could discontinue the use of the brace in August 2017.  (AR 30, citing AR 633.)

However, the ALJ did find that "some of the medical evidence supports partial limitation of function."  (AR 30.)  The ALJ found that Plaintiff's obesity could cause exertional and postural limitations, but reasoned that the assessed RFC was consistent with those limitations.  (AR 30-31.)  The ALJ relied on an August 15, 2017 evaluation in which "straight-leg raising was mildly positive on the left side, consistent with left lower extremity radiculopathy."  (AR 30-31, citing AR 633.)  The ALJ also pointed to Plaintiff's history of plantar fasciitis and heel spurs, but noted that her pain was "almost entirely resolved with treatment."  (AR 31; *see* AR 361-382.)

As to Plaintiff's difficulties holding items or typing on the computer, the ALJ found that Plaintiff's statements were not supported by the evidence.  (AR 31.)  The ALJ found that contrary to Plaintiff's testimony, there was no diagnostic imaging showing osteoarthritis of her hands.  (*Id.*)  The ALJ relied on examination results documenting Plaintiff's "grossly normal range of motion of the wrists and finger joints bilaterally," and good hand coordination.  (*Id.*, citing AR 452, 453.)  The ALJ also found that Plaintiff's statements regarding her difficulties with diarrhea were only    partially    supported    because    imaging    studies,    stool    studies,    and

esophagogastroduodenoscopy rendered negative results.  (AR 31, citing AR 447.)

As to Plaintiff's statements regarding her difficulties concentrating and being easily confused, the ALJ found that the evidence did not support the degree of limitation alleged.  (AR 32.)  The ALJ relied on Plaintiff's ability to "sustain concentration and work without distraction" during her January 18, 2016 psychological evaluation.  (*Id.*, citing AR 459.)  Additionally, the ALJ pointed to Plaintiff's appearance at the hearing and cited to her ability to recall her medications, the dosage, and the purpose of each medication.  (AR 32; *see* AR 60-61.)

The Court finds that the ALJ thoroughly considered Plaintiff's medical records (*see* AR 29-33) and found that the objective medical evidence did not support Plaintiff's allegations of disabling symptoms and limitations (*see* AR 33).  *See Reddick*, 157 F.3d at 725.  Throughout his decision the ALJ relies on medical records documenting normal and negative examination results, all of which the ALJ was permitted to rely on in assessing Plaintiff's testimony.  *See Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's normal exam findings when noting a lack of objective medical evidence to support the claimant's allegations); *see also Margolis v. Berryhill*, No. CV 17-5047 SS, 2018 WL 3129775, at *10 (C.D. Cal. June 22, 2018) (holding that ALJ may rely on normal and unremarkable examinations in discounting a claimant's subjective testimony); *Cosio v. Astrue*, No. EDCV 10-828 SS, 2011 WL 2784815, at *11 (C.D. Cal. July 15, 2011) (finding ALJ properly relied on negative examination results in finding claimant's testimony unsupported by the record).  Additionally, the ALJ was allowed to rely on the lack of diagnostic imaging as to Plaintiff's alleged osteoarthritis of the hands (*see* AR 31, 55-56).  *See Lazzotti v. Colvin*, No. 1:13-CV-1329-BAM, 2015 WL 1137086, at *11 (E.D. Cal. Mar. 12, 2015) ("[I]t was reasonable for the ALJ to discount Plaintiff's subjective complaints based on the lack of corroborating evidence from the EMG or nerve conduction studies.").

///

13

While other evidence in the record could be found to support Plaintiff's testimony, the ALJ was allowed to weigh the normal and negative examination results in evaluating Plaintiff's testimony. Where, as here, the evidence might be susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *See Ryan*, 528 F.3d at 1198 (citing *Burch*, 400 F.3d at 679); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). Accordingly, the ALJ's finding that Plaintiff's statements were not fully consistent with the medical record constitutes a specific, clear and convincing reason for discounting Plaintiff's subjective symptom testimony.

### b.      Reason No. 2: Inconsistent With Conservative Treatment

An ALJ may discount a claimant's testimony based on routine and conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

The ALJ found that treatment recommendations were not consistent with Plaintiff's alleged difficulties sitting, standing, and walking. (AR 30.) Specifically, the ALJ relied on the fact that Plaintiff was never prescribed the use of cane. (*Id.*) The ALJ also pointed to the fact that Plaintiff was prescribed a back brace, but was informed that she could discontinue the use of her brace at her convenience. (*Id.*; *see* AR 633.)

The Court finds that the ALJ properly relied on the inconsistency between Plaintiff's claims and the recommended treatment in discounting Plaintiff's subjective symptom testimony regarding her alleged difficulties in sitting, standing,

and walking. *See Turner v. Colvin*, No. 15-CV-00213-RS, 2016 WL 6039203, at *5 (N.D. Cal. Mar. 29, 2016) (holding ALJ properly discredited claimant's "testimony about her limitations regarding walking, standing, and sitting for long periods of time" where ALJ relied on the fact that claimant was not prescribed a cane, was prescribed Tramadol for pain, and used over-the-counter pain medication); *Esquivias v. Astrue*, No. CV 11-6183-SP, 2012 WL 2458116, at *6 (C.D. Cal. June 26, 2012) ("ALJ properly discounted plaintiff's subjective complaints as inconsistent with her conservative treatment" where ALJ cited to the fact that Plaintiff was not prescribed a cane, walker, or wheelchair).

### c.   Reason No. 3: Activities of Daily Living[4]

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility. *See Tommasetti*, 533 F.3d at 1039; *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  But a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff contends that throughout this process she has maintained that "while she is capable of engaging in brief and minimal activities of daily living, she is incapable of persisting at any of those activities of daily living over a complete 8 hour period of time." (JS 20.)  Furthermore, she contends that she "certainly would be incapable of persisting at work related activities over an 8 hour[] work day and/or 40

---

[4] After summarizing Plaintiff's symptom testimony, the ALJ noted that Plaintiff "provided conflicting accounts concerning the degree to which her impairments limit her activities of daily living." (AR 30.)  The ALJ stated that Plaintiff's "written statements reflect far greater functional abilities than [her] testimony." (*Id.*)  Plaintiff contends that any inconsistencies in the record "simply reflect a progression of symptoms and additional impairments such as the fact that Plaintiff's lumbar spinal impairments appears to have substantially worsened in December of 2016 when she appears to have suffered an acute compression fracture of her L3 vertebra." (JS 18-19.)  However, the Court's review of the ALJ's decision shows that the ALJ did not rely on inconsistencies between Plaintiff's written statements and hearing testimony in discounting her subjective statements.  (*See* AR 29-33.)

hour work week." (*Id.*)  Plaintiff argues that her statements are supported by her sister's third-party function report.[5] (*Id.*)

The ALJ discounted Plaintiff's statements because the records show Plaintiff engaged in activities that exceed the degree of limitation alleged.  (AR 33; *see* AR 29-33.)  The ALJ found that Plaintiff's statements regarding her alleged difficulty holding items and typing on a computer were not well supported by the medical evidence or her activities.  (AR 31.)  The ALJ relied on Plaintiff's ability to use her hands and fingers to play computer games, feed her dog, and complete written forms and standardized tests.  (*Id.*, citing AR 53-55, 255, 275-83, 311-19, 457-62.)

As to Plaintiff's claims regarding the alleged difficulties with diarrhea, the ALJ found that Plaintiff's statements were only partially supported.  (AR 31.)  The ALJ reasoned that Plaintiff's symptoms did not "appear to occur so frequently as to restrict her to home, because she has reported attending church and shopping in stores on a regular basis."  (*Id.*, citing AR 255.)  The ALJ also relied on the fact that Plaintiff obtained a letter from a psychiatrist prescribing Plaintiff an emotional support animal, which the ALJ notes would be "unnecessary" if Plaintiff "is unable to 'stray far' from home."  (AR 31, citing AR 631.)

Similarly, the ALJ found that the evidence did not generally support the degree of limitation alleged as to Plaintiff's difficulties concentrating and being easily confused.  (AR 31.)  The ALJ relied on Plaintiff's function report where she indicated "she spends more than 12 hours per day watching television and using a computer." (*Id.*, citing AR 315; *see* AR 255, 278.)  The ALJ noted that "[s]ustaining 12 hours of activity generally requires concentration, persistence, and pace."   (AR 31.) Additionally, in discounting Plaintiff's alleged difficulty in understanding

///

---

[5] The ALJ gave limited weight to the third-party function reports prepared by Plaintiff's sister, Cynthia Terbest.  (AR 33.)  Plaintiff does not challenge the ALJ's findings as to the third-party function reports.  (*See* JS 1-32.)

technology, the ALJ pointed to Plaintiff's ability to play computer games, shop online, and use the voice assistant to send text messages. (*Id.*)

The mere ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). For example, a claimant's ability to watch television is not an activity that is easily transferable to the workplace. *See Orn*, 495 F.3d at 639 (finding that "reading, watching television, and coloring in coloring books are activities that are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace").

However, the ALJ may also rely on a claimant's "daily activities to form the basis of an adverse credibility determination" where the activities contradict the claimant's other testimony. *Orn*, 495 F.3d at 639; *see Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018) ("While transferability of skills to a work setting is one way in which an ALJ may consider a claimant's daily activities, an ALJ may also discount claimant testimony where reported daily activities contradict the claimant's alleged extent of her limitations."). Here, the ALJ found several of Plaintiff's claims were inconsistent with Plaintiff's activities. (*See* AR 30-32.) For example, the ALJ compared Plaintiff's testimony that she had difficulty holding items or typing and Plaintiff's statements that she played computer games, fed her dog, and completed written forms and tests. (AR 31.) Similarly, the ALJ compared Plaintiff's testimony that she is unable to "stray far" from home due to her difficulties with diarrhea and evidence showing Plaintiff attended church, shopped in stores, and obtained a prescription for an emotional support animal. (*Id.*) The ALJ properly cited numerous examples identifying inconsistencies between Plaintiff's testimony and the activities

17

she engaged in. *See Burkett*, 732 F. App'x at 552 (finding ALJ did not err in relying on claimant's activities where "ALJ cited examples in the record illustrating inconsistencies between [claimant's] testimony concerning the limiting effects of her symptoms and her activities"). Accordingly, this was a specific, clear and convincing reason for discounting Plaintiff's subjective symptom testimony.

### 6.    Conclusion

The Court finds that the ALJ gave specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

### B.    The ALJ Properly Considered the Relevant Medical Evidence of Record in Assessing Plaintiff's RFC

Plaintiff contends that the ALJ failed to properly consider significant medical evidence of record as to Plaintiff's physical and mental impairments in assessing Plaintiff's RFC. (JS 5; *see* JS 6-12.)

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); *see Robbin*s, 466 F.3d at 883 (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 C.F.R. §§ 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

### 1.    Opinion Evidence

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).

18

1   Most often, the opinion of a treating physician is given greater weight than the
2   opinion of a non-treating physician, and the opinion of an examining physician is
3   given greater weight than the opinion of a non-examining physician.  *See Garrison*
4   *v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

5     The ALJ must provide "clear and convincing" reasons to reject the ultimate
6   conclusions of a treating or examining physician.  *Embrey v. Bowen*, 849 F.2d 418,
7   422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31.  When a treating or examining
8   physician's opinion is contradicted by another opinion, the ALJ may reject it only by
9   providing specific and legitimate reasons supported by substantial evidence in the
10  record.  *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec.*
11  *Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  "An ALJ can satisfy the 'substantial
12  evidence' requirement by 'setting out a detailed and thorough summary of the facts
13  and conflicting evidence, stating his interpretation thereof, and making findings.'"
14  *Garrison*, 759 F.3d at 1012 (citation omitted).

### a. Mental Impairments

16    In assessing Plaintiff's mental RFC, the ALJ considered the opinions of
17  consultative examiner Anthony Benigno, Psy.D., state consultant Eugene Campbell,
18  Ph.D., and Plaintiff's treating psychiatrist Grace Reid, M.D.  (AR 32-33.)

19    Plaintiff contends that the ALJ's rejection of Dr. Reid's opinions constitutes
20  reversible error.  (JS 8; *see* JS 6-8.)  Plaintiff argues that the "[o]nly by rejecting the
21  opinions of the treating psychiatrist and attributing substantial weight to those of his
22  own consultants," could the ALJ find the assessed mental RFC.  (JS 6.)  The
23  Commissioner contends that "the ALJ properly rejected the[] opinions as
24  unsupported by objective clinical findings and inconsistent with other evidence in the
25  record."  (JS 12; *see* JS 17-19.)

### i. Dr. Benigno

27    On January 18, 2016, Dr. Benigno conducted a complete psychological
28  evaluation.  (AR 457-62.)  Plaintiff was alert and presented with a cooperative

attitude.  (AR 459.)  She demonstrated a willingness to complete tasks and appeared to be putting forth her best effort.  (*Id.*)  Plaintiff "did not manifest any bizarre behaviors, abnormal movements, tics or tremors."  (*Id.*)  Her eye contact was inappropriate.  (*Id.*)  Dr. Benigno found Plaintiff's speech was clear and understandable with no gross distortions of speech.  (*Id.*)  Plaintiff's response time and work pace were average.  (*Id.*)  She was oriented to person, time, place, and the purpose of the examination, and was able to state her name, age, and date of birth.  (*Id.*)  Plaintiff's intellectual functioning was in the low average range.  (*Id.*)

Dr. Benigno observed that Plaintiff's thoughts were coherent and logical, and the content was appropriate.  (AR 459.)  Plaintiff's "mood was dysthymic with restricted range of affect" and she reported symptoms of depression and anxiety.  (*Id.*)  Plaintiff denied experiencing delusions or hallucinations, and Dr. Benigno found no signs of perceptual disturbance or misinterpretation of consensual reality during the exam.  (*Id.*)  Her immediate, recent, and remote memories were intact, and Plaintiff was able to provide general details of her daily activities.  (*Id.*)  Plaintiff "demonstrated an adequate attention span for answering interview questions and following test instructions."  (*Id.*)  She was also able to sustain concentration and work without distraction during the performance tasks.  (*Id.*)  Her fund of knowledge was adequate.  (*Id.*)  Plaintiff's insight into her illness and judgment for commonsense hypothetical events was adequate.  (AR 460.)

Plaintiff completed the Trail Making Test, Part A and B, the Wechsler Adult Intelligence Scale, and the Wechsler Memory Scale.  (AR 460.)  As to Trail A of the Trail Making Test, Plaintiff's results were "in the mildly impaired range of tasks requiring sustained attention and visual tracking ability."  (*Id.*)  Trail B was in the normal range.  (*Id.*)  Plaintiff's general intellectual functioning was in the low average range.  (*Id.*)  Her general memory was in the low average range.  (AR 461.)

After the examination, Dr. Benigno opined that Plaintiff's "overall cognitive ability falls within the low average range."  (AR 461.)  Dr. Benigno found that

1   Plaintiff's "[p]robable DSM-IV diagnoses" included major depressive disorder, mild,

2   and personal psychosocial stressors.  (*Id.*)  Plaintiff had a GAF score of 70.  (*Id.*)

3       Dr. Benigno opined that Plaintiff would be able to understand, remember, and

4   carry out short, simplistic instructions with no difficulty.  (AR 461.)  However,

5   Plaintiff would have mild difficulties understanding, remembering, and carrying out

6   detailed and complex instructions.  (*Id.*)  She would not have difficulty making

7   simplistic work-related decisions without special supervision or responding to

8   change in a normal workplace setting.  (*Id.*)  Plaintiff would have mild difficulty

9   complying with job rules such as safety and attendance.  (*Id.*)  Similarly, Plaintiff

10  would have mild difficulty maintaining persistence and pace in a normal workplace

11  setting.  (*Id.*)  Dr. Benigno also noted that Plaintiff had no history of interpersonal

12  difficulties and was socially appropriate with him.  (*Id.*)  He opined that Plaintiff

13  "presents no difficulty to interact appropriately with supervisors, coworkers[,] and

14  peers on a consistent basis."  (*Id.*)  Plaintiff appeared able to manage her own

15  finances.  (*Id.*)  She also arrived early to the examination.  (*Id.*)

16      The ALJ gave Dr. Benigno's opinion significant weight because it was

17  "supported by the clinical findings from his examination."  (AR 32.)  "The opinion

18  of a consultative examiner, . . . may be relied upon by the ALJ to determine a

19  claimant's residual functional capacity if the opinion is supported by clinical tests

20  and observations upon examination."  *Sheaffer v. Astrue*, No. EDCV 08-0998-JTL,

21  2009 WL 1531852, at *3 (C.D. Cal. June 2, 2009) (citing *Tonapetyan v. Halter*, 242

22  F.3d 1144, 1149 (9th Cir. 2001)).  Here, Dr. Benigno's opinion was rendered after a

23  complete psychological evaluation, including a mental status examination, the Trail

24  Making Test, Part A and B, the Wechsler Adult Intelligence Scale, and the Wechsler

25  Memory Scale.  (AR 32; *see* AR 457-62.)  Because Dr. Benigno's opinion was

26  supported by the results of a complete psychological evaluation, the ALJ did not err

27  in giving significant weight to Dr. Benigno's opinion.  *See Belmontez v. Colvin*, No.

28  ED CV 14-1590-PLA, 2015 WL 2063945, at *6 (C.D. Cal. May 4, 2015) (finding

ALJ did not err in assigning significant weight to consultative examiner's opinion where the opinion was "supported by [examiner's] independent clinical findings").

### ii.   Dr. Campbell

On February 8, 2016, Dr. Campbell reviewed Plaintiff's disability and DIB claim at the initial level.  (AR 77-78, 89-90; *see* AR 72-83, 84-95.)  Dr. Campbell found that Plaintiff had a medically determinable impairment that did not satisfy the diagnostic criteria and was nonsevere.  (AR 77-78, 89-90.)  Plaintiff was not restricted in her activities of daily living.  (AR 78, 90.)  Dr. Campbell found Plaintiff did not have difficulties maintaining social functioning.  (*Id.*)  She did not have repeated episodes of decompensation, each of extended duration.  (*Id.*)  Plaintiff did have mild difficulties maintaining, concentration, persistence, or pace.  (*Id.*)

The ALJ gave significant weight to Dr. Campbell's opinion that Plaintiff had mild limitations as to concentration, persistence, and pace because the opinion was consistent with the evidence available at the time of that review.  (*Id.*)  Additionally, the ALJ noted that Plaintiff "made an effort to receive psychiatric treatment," and he gave Plaintiff's "statements some benefit of the doubt and [found] that she is limited to the above" RFC assessment.  (AR 32-33.)  Because the ALJ found Dr. Campbell's opinion was consistent with the evidence, the ALJ did not err in giving Dr. Campbell's opinion significant weight.  *See Ruiz v. Colvin*, 638 F. App'x 604, 606 (9th Cir. 2016) (finding ALJ did not err in giving greatest weight to state consultants, where ALJ found "their opinions consistent with the greater medical record, progress and treating notes, and [claimant's] description of her daily activities.").

### iii.   Dr. Reid

In June 2017, Dr. Reid provided a "written response for the medical management of" Plaintiff.  (AR 625.)  Dr. Reid explained she has been treating Plaintiff for major depressive disorder, severe, recurrent since June 15, 2015.  (*Id.*)  Dr. Reid noted that Plaintiff "was currently taking psychiatric medications for [her] mood disorder" and benefits from her pet for emotional and psychological support.

22

(*Id.*)  Dr. Reid opined that Plaintiff "needs to have [her] pet dog with [her] at all times, if possible, as an adjunct non-pharmacological therapy for [her] psychiatric diagnosis."  (*Id.*)  Similarly, in August 2017, Dr. Reid prepared a letter requesting that Plaintiff be allowed to travel with her emotional support animal in the cabin of an aircraft.  (AR 631.)  Dr. Reid explained that Plaintiff "has certain limitations related to social interactions and coping with stress and anxiety" which are alleviated by her emotional support animal.  (*Id.*)

On July 13, 2017, Dr. Reid prepared an assessment documenting Plaintiff's mental capacity.  (AR 626-27.)  She opined that Plaintiff has a medically verifiable condition that would limit or prevent her from performing certain tasks.  (AR 626.)  Plaintiff's condition is chronic, and she is actively seeking treatment.  (*Id.*)  Dr. Reid opined that Plaintiff is unable to work and has limitations that affect her ability to work or participate in education or training.  (*Id.*)  Plaintiff's condition does not require someone to be in the home to care for her.  (*Id.*)

As to Plaintiff's mental capacity, Dr. Reid opined that Plaintiff "is unable to concentrate or sustain attention or tolerate social interactions due to severe anxiety." (AR 627.)  Similarly, due to severe anxiety, she cannot tolerate social interaction with her peers or supervisors.  (*Id.*)  She experiences panic attacks with episodes of significant nausea, shortness of breath, and heart palpitations.  (*Id.*)  Dr. Reid opined that Plaintiff cannot concentrate.  (*Id.*)  Plaintiff is easily distracted as a result of "significant medical illness of diarrhea and back pain, and has a short attention span." (*Id.*)  Plaintiff "is unable to perform in stressful situations or environments due to limited coping and stress management skills."  (*Id.*)

The ALJ gave Dr. Reid's June 2017 assessment limited weight.  (AR 33.) Because Dr. Reid is a treating psychiatrist whose opinion has been contradicted by Drs. Benigno and Campbell, the ALJ needed to provide specific and legitimate reasons for giving Dr. Reid's opinion limited weight.  *See Lester*, 81 F.3d at 830 ("[I]f the treating doctor's opinion is contradicted by another doctor, the

1   Commissioner may not reject this opinion without providing 'specific and legitimate

2   reasons' supported by substantial evidence in the record for so doing.").

3        First, the ALJ reasoned that Dr. Reid's assessment was inconsistent with the

4   objective evidence. (AR 33.) An ALJ "need not accept the opinion of any physician,

5   including a treating physician, if that opinion is brief, conclusory, and inadequately

6   supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

7   2002). The ALJ noted that Dr. Reid's assessment did "not contain citations to

8   supporting clinical findings or other objective evidence." (AR 33.) Plaintiff points

9   to evidence in the record which allegedly supports Dr. Reid's assessment. (*See* JS 6-

10  7.) However, Dr. Reid does not rely on these records, or any records in support of

11  her opinion. Additionally, the ALJ explained that Dr. Reid "repeats [Plaintiff's]

12  allegations that she is unable to concentrate or sustain attention." (AR 33.) Plaintiff's

13  statements were inconsistent with Dr. Benigno's examination, where the Trail

14  Making Test showed "mild to no impairment" in Plaintiff's ability to sustain

15  sufficient attention, and the "WMS-IV" showed Plaintiff's memory was in the low

16  average range. (*Id.*) The ALJ properly discounted Dr. Reid's opinion on the basis

17  that her assessment was inconsistent with the objective evidence. *See Maloof v.

18  Berryhill*, No. 8:16-CV-01880-SK, 2018 WL 1163003, at *1 (C.D. Cal. Jan. 22,

19  2018) (affirming ALJ's assessment of treating physician's opinion, even where

20  claimant cited to evidence in support of the opinion, where ALJ found the opinion

21  was conclusory because the physician "provid[ed] very little explanation of the

22  evidence relied on in forming [it]" (alteration in original)); *Hernandez v. Colvin*, No.

23  ED CV 13-01385 RZ, 2014 WL 897268, at *1 (C.D. Cal. Mar. 5, 2014) (finding ALJ

24  gave specific and legitimate reasons for affording physician's opinion little weight

25  where the opinion was not supported by "any objective clinical or diagnostic

26  finding," the physician did not explain what the opinion was based on, and relied

27  "heavily" on the claimant's statements).

28       ///

Second, the ALJ explained that Dr. Reid's assessment was inconsistent with Plaintiff's "own description of her activities of daily living." (AR 33.)  An ALJ may properly discount a physician's opinion that is inconsistent with a claimant's daily activities. *See Rollins*, 261 F.3d at 856.  Specifically, the ALJ relied on Plaintiff's statements that she "spends more than 12 hours per day pursuing hobbies and interests, such as watching television, using a computer, reading, and listening to music." (AR 33 (internal citations omitted); *see* AR 53-55, 315, 459.)  In discussing Plaintiff's statements, the ALJ reasoned that "sustaining 12 hours of activity generally requires concentration, persistence, and pace." (AR 32.)  This was a specific and legitimate reason for giving Dr. Reid's opinion limited weight. *See Green v. Berryhill*, 731 F. App'x 596, 598-99 (9th Cir. 2018) ("The ALJ properly rejected [physician's] opinion based on specific and legitimate reasons, including lack of clinical support for [the] opinion prior to March 2011, inconsistency with the treatment record, and inconsistency with [claimant's] activities."); *Wheatley v. Berryhill*, 706 F. App'x 424, 425 (9th Cir. 2017) (finding ALJ gave specific and legitimate reasons for giving "little to no weight" to physician's opinion that was inconsistent with medical record and claimant's daily activities).

Accordingly, the ALJ provided specific and legitimate reasons for giving Dr. Reid's June 2017 assessment limited weight.

Finally, the ALJ gave no weight to Dr. Reid's opinion that Plaintiff requires an emotional support animal because the opinion did not provide "specific information regarding [Plaintiff's] work-related abilities" (AR 33).  The ALJ properly rejected Dr. Reid's statements because they were conclusory and were not supported by clinical findings. *See Thomas*, 278 F.3d at 957.

### b.   Physical Impairments

In assessing Plaintiff's physical RFC, the ALJ considered the opinions of consultative examiner Azizollah Karamlou, M.D., and state consultants Michael Douglas, M.D. and C. Scott M.D.  (AR 31-32.)

Plaintiff contends that "the ALJ's reliance on the consultative examiner's opinion and the state agency opinions all of which were rendered in 2016 also constitutes reversible error" because "those opinions were rendered without the benefit of the medical evidence of record in this case including the two MRI reports documenting severe findings in Plaintiff's lumbar spine."   (JS 12.)   The Commissioner contends that "the ALJ's RFC finding is supported by substantial evidence and free from legal error."   (JS 17.)   The Commissioner also notes that "Plaintiff does not present any medical opinion evidence suggesting that Plaintiff had further physical limitations than those found by the ALJ."   (*Id.*)

### i.    Dr. Karamlou

On January 6, 2016, Dr. Karamlou conducted an internal medicine consultation, including a physical examination.   (AR 450-54.)   Plaintiff was noted to be well-developed, appeared her stated age, and had exogenous obesity.   (AR 451.)   She was not in acute distress.   (*Id.*)   Plaintiff had normal gait and balance, and did not require the use of an assistive device.   (*Id.*)   Her skin was warm and dry, with no lesions or jaundice.   (*Id.*)

As to Plaintiff's nodes, Dr. Karamlou documented "no cervical, supraclavicular, axillary or inguinal adenopathy."   (AR 451.)   Her extraocular muscles were intact, and fundi were benign without papilledema, hemorrhages or exudates.   (*Id.*)   Dr. Karamlou did not identify any visual field deficits or scleral icterus.   (*Id.*)

Plaintiff's neck was supple and had a midline trachea.   (*Id.*)   Plaintiff's range of motion of her cervical spine was within normal limits.   (*Id.*)   Plaintiff had "[n]ormoactive bowel sounds," and nondistended, nontender abdomen.   (*Id.*)   There was "no hepatosplenomegaly, ascites or masses."   (*Id.*)

As to Plaintiff's back, there was local tenderness with no evidence of muscle spasm or radiculopathy.   (AR 452.)   Plaintiff's range of motion was decreased, flexion was 65/90 degrees and extension 10/20 degrees.   (*Id.*)   Plaintiff's extremities

had "[p]eripheral pulses 2+ and symmetrical throughout." (*Id.*)   There was no clubbing, cyanosis, or pedal edema, and no joint deformities, effusions, warmth, swelling, crepitus, or pain on motion. (*Id.*)  There was no laxity of any joint. (*Id.*)

Dr. Karamlou documented tenderness in Plaintiff's shoulders and difficulty fully raising her arms above her head. (AR 452.)  Plaintiff's wrist and elbow range of motion were grossly within normal limits bilaterally. (*Id.*)   Her metacarpophalangeal, proximal interphalangeal, and distal interphalangeal joint flexion was grossly within normal limits bilaterally. (*Id.*)  Plaintiff's hip, knee, and ankle range of motion are grossly within normal limits bilaterally. (*Id.*)

A neurologic exam showed Plaintiff's cranial nerves II-XII were intact. (AR 452.)  She had normal muscle bulk and tone without atrophy. (*Id.*)  Plaintiff's sensation was "[i]ntact to light touch throughout" and she had "good hand coordination." (AR 452-53.)  Her "[d]eep tendon reflexes are 1+ and symmetrical throughout." (AR 453.)

Dr. Karamlou found Plaintiff had hypertension, under treatment; atypical chest pain; low back pain syndrome with mild-intensity pain and tendonitis of the shoulders; and plantar fasciitis and calcaneal spur, which is painful on walking. (AR 453.)  Plaintiff was on an anti-inflammatory agent. (*Id.*)

As to Plaintiff's functional limitations, Dr. Karamlou opined Plaintiff was able to lift and carry 20 pounds occasionally, and 10 pounds frequently. (AR 453.)  She could walk and stand for six hours out of an eight-hour day. (*Id.*)  She could sit for six hours out of an eight-hour day. (*Id.*)  She could push and pull frequently with her upper and lower extremities. (*Id.*)  Plaintiff could bend, stoop, kneel, and crawl frequently. (*Id.*)  Dr. Karamlou also opined that there was "no impairment with handling and fingering, except for fully raising the arms above the head." (*Id.*)  Plaintiff could walk on uneven terrain, climb ladders, and work at heights. (*Id.*)  Plaintiff had no limitation as to her ability to hear and see. (AR 454.)  She did not need an assistive device. (*Id.*)

27

After summarizing Dr. Karamlou's objective findings and opinion, the ALJ gave the opinion great weight because the assessment was "supported by the objective findings from his examination." (AR 31.)  As discussed above, an ALJ may properly rely on the opinion of a consultative examiner, where the examiner's opinion is based on independent clinical findings. *See Tonapetyan*, 242 F.3d at 1149; *Sheaffer*, 2009 WL 1531852, at \*3.  Because Dr. Karamlou's opinion was based on his own independent examinations of Plaintiff (*see* AR 450-54), the ALJ did not err in giving the opinion great weight. *See Tonapetyan*, 242 F.3d at 1149.

### ii.       Drs. Douglas and Scott

State agency consultant Dr. Douglas reviewed Plaintiff's applications (*see* AR 72-83, 84-95), and Dr. Scott reviewed the applications upon reconsideration (*see* AR 98-109, 110-21.).  Dr. Douglas found Plaintiff had exertional limitations.  (AR 79, 91.)  Plaintiff could occasionally lift and/or carry 20 pounds, and could frequently lift and or carry 10 pounds.  (AR 79, 91.)  She could stand and/or walk with normal breaks for a total of six hours in an eight-hour workday.  (AR 79, 91-92.)  She could also sit for a total of six hours in an eight-hour workday.  (AR 79-80, 92.)  Her ability to push and/or pull was limited in her upper and lower extremities due to back pain with decreased range of motion and "obesity, freq." (AR 80, 92.)

As to postural limitations, Dr. Douglas opined Plaintiff could balance, stoop, kneel, crouch, and crawl frequently.  (AR 80, 92.)  Plaintiff's ability to climb ramps, stairs, ladders, ropes, and scaffolds was unlimited.  (AR 80, 92.)  Her ability to reach overhead was limited due to tenderness in shoulders bilaterally and difficulty fully raising her arms above head, frequently.  (AR 80, 92.)  However, her ability to handle, finger, and feel was unlimited.   (AR 80-81, 92-93.)   Plaintiff had no visual, communicative, or environmental limitations.  (AR 81, 93.)

Dr. Douglas explained that Plaintiff had a history of hypertension, but there was "no evidence of end organ damage stroke." (AR 81, 93.)  Plaintiff alleged "heel spurs and problems walking," but "upon exam she ha[d] normal gait and balance and

does not require an [assistive device] for ambulation." (*Id.*)  As to Plaintiff's back pain complaints, Dr. Douglas explained that she had a decreased range of motion, but there was "no evidence of spasm or radiculopathy and no evidence of neurological deficits." (*Id.*)  Plaintiff had tenderness in her shoulders bilaterally and difficulty fully raising her arms above her head. (*Id.*)  Dr. Douglas found that there was no evidence that Plaintiff's irritable bowel syndrome was functionally limiting. (*Id.*)  In assessing Plaintiff's RFC, Dr. Douglas considered Plaintiff's obesity and also found that the "[c]ombined effects of all impairments support limitations reflected in RFC." (*Id.*)  Upon reconsideration, Dr. Scott agreed with Dr. Douglas's assessment and "affirmed" it as written. (AR 107, 119.)

The ALJ gave great weight to the opinions of Drs. Douglas and Scott because the assessments were "consistent with the objective findings in the medical file." (AR 31-32.)  Additionally, the ALJ noted that "[s]tate agency medical agency consultants are highly qualified physicians who are experts in Social Security disability evaluation." (*Id.*)

Plaintiff's argument that the ALJ erred in giving great weight to the opinions of Drs. Douglas and Scott because those opinions were rendered without the benefit of all of the medical evidence is unpersuasive. (*See* JS 12.)  The fact that the state agency consultant did not review records beyond the date of their review "is not an error." *See Sportsman v. Colvin*, 637 F. App'x 992, 995 (9th Cir. 2016).  The ALJ properly reviewed the entire record and found that the opinions of Drs. Douglas and Scott were "consistent with the objective medical findings in the medical file" (AR 32). *See Sportsman*, 637 F. App'x at 995 (stating that it is not error for a state agency consultant to fail to review subsequent medical records, if the ALJ reviews the entire record and concludes that the later-dated medical records are consistent with the overall medical evidence).  Thus, the ALJ did not err in assigning great weight to the opinions of Drs. Douglas and Scott. *See Ruiz v. Colvin*, 638 F. App'x 604, 606 (9th Cir. 2016) (finding that the ALJ did not err in giving the greatest weight to non-

examining state agency medical consultants because "the ALJ found their opinions consistent with the greater medical record, progress and treating notes, and [the plaintiff]'s description of her daily activities"); *see also Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989) ("[T]he reports of consultative physicians called in by the Secretary may serve as substantial evidence.").

### 2.     Objective Medical Evidence

Plaintiff points to other evidence in support of her contention that the ALJ failed to properly assess her RFC.  (JS 5-12.)  She contends that "[n]owhere in the [ALJ's] unfavorable decision does he even mention the two MRIs of Plaintiff's lumbar spine which were performed in" March 2017 and May 2017, "which reveal significant findings which are consistent with and supportive of Plaintiff's subjective complaints."  (JS 11-12).  These MRIs document a compression fracture of the L3 vertebral body.  (AR 578-79, 622-23)

While Plaintiff contends that the ALJ did not mention the two MRIs in early 2017, the ALJ did note that Plaintiff "was prescribed a back brace for a compression fracture, the injury healed and in August 2017 [Plaintiff's] doctor advised her that she could discontinue the back brace."  (*See* AR 30, citing AR 633.)  "[T]he ALJ does not need to 'discuss every piece of evidence'" when "interpreting the evidence and developing the record."  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted).  As discussed above in connection with Plaintiff's subjective complaints, the ALJ thoroughly reviewed the medical records presented by Plaintiff.  (*See* AR 29-33.)  Where, as here, the evidence might be susceptible to more than one rational interpretation, the ALJ's decision should be upheld.  *See Ryan*, 528 F.3d at 1198 (citing *Burch*, 400 F.3d at 679); *see Robbins*, 466 F.3d at 882.

### 3.     Conclusion

In sum, the Court finds that the ALJ properly considered the relevant medical evidence of record in assessing Plaintiff's RFC.

///

C.   **The ALJ's Conclusions at Step Four as to Plaintiff's Past Relevant Work is Supported by Substantial Evidence**

Plaintiff contends that the ALJ's decision is "not supported by substantial evidence in that the ALJ's conclusions at Step Number Four of the Sequential Evaluation Process are based upon defective vocational expert testimony and inconsistent with the description of Plaintiff's past relevant work in the Dictionary of Occupational Titles and Selected Characteristics."   (JS 26; *see* JS 26-28.) Specifically, Plaintiff contends that the Dictionary of Occupational Titles ("DOT") description of Plaintiff's past work and the VE's testimony is in inconsistent with the assessed RFC limiting Plaintiff to occasional work contact with others.  (JS 27; *see* AR 29.)

The Commissioner contends "the ALJ properly found that Plaintiff could perform her past relevant work as a storage rental facility clerk."  (JS 29; *see* JS 29-30.)  The Commissioner contends that the ALJ was allowed to rely on the VE's testimony.  (JS 29-30.)

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'"   *Carmickle*, 533 F.3d at 1166 (quoting *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)).  However, the ALJ has the duty to make the requisite factual findings to support the conclusion.  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).  "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work."  *Id.* at 845 (citing SSR 82-62, 1982 WL 31386 (Jan. 1, 1982)).

The VE's testimony may serve as substantial evidence to support an ALJ's step four finding.  *See Bailey v. Astrue*, No. EDCV 09-1437-RC, 2010 WL 3369152, at *5 (C.D. Cal. Aug. 24, 2010) ("vocational expert's testimony constitutes substantial evidence to support the ALJ's Step Four determination that [claimant] can

1  perform his past relevant work."). An ALJ may rely on the testimony of a vocational

2  expert that contradicts the DOT, if the record contains "persuasive evidence to

3  support the deviation." *Pinto*, 249 F.3d at 846 (quoting *Johnson v. Shalala*, 60 F.3d

4  1428, 1435 (9th Cir. 1995)). "[I]n order for an ALJ to rely on a job description in the

5  [DOT] that fails to comport with a claimant's noted limitations, the ALJ must

6  definitively explain this deviation." *Id.* at 847. "Evidence sufficient to permit such

7  a deviation may be either specific findings of fact regarding the claimant's residual

8  functionality, or inferences drawn from the context of the expert's testimony." *Lopez*

9  *v. Astrue*, No. CV 12-3036 JC, 2012 WL 3711084, at *3 (C.D. Cal. Aug. 28, 2012).

10      Here, the ALJ found that Plaintiff could perform her past work as a storage-

11  facility rental clerk and that the "work does not require the performance of work-

12  related activities precluded by" Plaintiff's RFC. (AR 33.) The ALJ noted that

13  Plaintiff actually performed the work as classified in the DOT. (AR 34.) At the

14  hearing, the ALJ presented the VE with a hypothetical person sharing the same

15  general RFC as Plaintiff. (AR 66-67.) The VE testified that a hypothetical person

16  with the same general RFC as Plaintiff would be able to performs the job of storage-

17  facility rental clerk as described in the DOT. (AR 67.)

18      The VE addressed the alleged deviation from the DOT's description. (*See* AR

19  67-68). The VE did note that it was "a little tricky," but that based on her experience,

20  storage facility rental clerks work more independently and Plaintiff's limitation to

21  only occasional interaction with others is not an issue because they are not in

22  "constant contact with people." (*Id.*) The VE testified that Plaintiff's limitation to

23  occasional contact with others does not preclude Plaintiff from performing her past

24  work as described by the DOT. (AR 67.) The VE explained that the DOT does not

25  list the level of interaction with others, and that her testimony is based on her

26  experience in placing people in those jobs. (*Id.*) The ALJ found the VE's

27  "explanation to be reasonable and accepted the testimony in accordance with

28  ///

32

SSR 00-4p."[6]   (AR 34.)   Accordingly, the ALJ did not err in relying on the VE's testimony at step four.  *See Buckner-Larkin v. Astrue*, 450 F. App'x 626, 628-29 (9th Cir. 2011) (affirming in the context of step five the ALJ's reliance on VE testimony where VE "noted that although the DOT does not discuss a sit/stand option, his determination was based on his own labor market surveys, experience, and research. Therefore, the conflict between the DOT and the [VE] was addressed and explained by the [VE], and the ALJ addressed this in the decision."); *see also Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.  The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper.").

Thus, because the ALJ properly relied on the VE's testimony, the ALJ's conclusion at step four is supported by substantial evidence.

## V.   **CONCLUSION**

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.


DATED:  April 24, 2020                    _____
                                          ROZELLA A. OLIVER
                                          UNITED STATES MAGISTRATE JUDGE


**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

---

[6] Social Security Ruling 00-4p clarifies how the Social Security Administration uses the testimony of VEs and vocational specialists, including how conflicts between testimony and the DOT are resolved and what constitutes a reasonable explanation of the conflict.  SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

33